STEVEN A. BUXBAUM AND KERRY BUXBAUM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Buxbaum v. Commissioner
Docket No. 16087-89
United States Tax Court
T.C. Memo 1992-675; 1992 Tax Ct. Memo LEXIS 731; 64 T.C.M. (CCH) 1376; November 24, 1992, Filed *731 For Petitioners: James L. Franklin. For Respondent: William G. Bissell and M. Kathryn Bellis. DRENNEN
DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This matter is before the Court on petitioners' motion for litigation costs filed on March 6, 1991, pursuant to Rule 231 [1] and section 7430. Petitioners Steven and Kerry Buxbaum, who are husband and wife, filed joint Federal income tax returns for 1980, 1982, 1983, and 1984. By statutory notice of deficiency, dated March 30, 1989, respondent determined the following deficiencies in, and additions to, petitioners' income tax for those years, with increased interest under section 6621(c). Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1980
$ 631.00
$ 31.55
[1]
1982
36,393.63
1,819.68
[1]
1983
42,617.00
2,130.85
[1]
1984
2,869.70
143.49
[1]
*732 Additions to Tax
Year
Sec. 6621(c)
Sec. 6659
Sec. 6661
1980
[2]
- 0 -
- 0 -
1982
[2]
$ 10,918.09
- 0 -
1983
[2]
- 0 -
$ 10,654.25
1984
[2]
- 0 -
- 0 -
Petitioners filed their petition on July 3, 1989. At that time, they were residing in Houston, Texas. On April 4, 1991, the parties filed a stipulated settlement document in which they agreed that respondent's determinations were correct only to the extent that there is a deficiency in petitioners' 1982 income tax of $ 33,489.50, an addition to their 1982 income tax of $ 3,348.95 under section 6659, as well as additional interest on their 1982 tax deficiency pursuant to section 6621(c). *733 The parties agreed that there are no other additions to tax due from petitioners for their taxable year 1982. They further agreed that there are no deficiencies in, or additions to, petitioners' 1980, 1983, or 1984 income taxes as determined by respondent on the deficiency notice. After the parties had informed the Court that they had settled this case, petitioners filed a motion for an award of litigation costs and attorney's fees pursuant to section 7430 and Rule 231. Respondent timely filed an objection to petitioners' motion. As the parties have settled their disputes with respect to all of the tax deficiencies, additions to tax, and increased interest determined by respondent in the deficiency notice, the remaining issues pertain only to whether petitioners qualify as the "prevailing party" entitled to an award of reasonable litigation costs by satisfying the conjunctive prerequisites to such an award as provided in section 7430. Thus, the specific issues before us are: (1) Whether respondent's positions in these cases were substantially justified as required by section 7430(c)(4)(A)(i); (2) whether petitioners have substantially prevailed with respect to either the amount *734 in controversy or the most significant issue or set of issues presented, as required by section 7430(c)(4)(A)(ii); (3) whether petitioners meet the net worth requirements for an award of litigation costs as required by section 7430(c)(4)(A)(iii); (4) whether petitioners have exhausted their administrative remedies as required by section 7430(b)(1); (5) whether petitioners have unreasonably protracted the proceedings in this case within the meaning of section 7430(b)(4), and (6) whether the costs claimed by petitioners are reasonable as required by section 7430(c)(1). Petitioners' case involved two sets of substantive tax issues which were ultimately settled before trial. One set of issues related to whether petitioners were entitled to certain pass-through loss deductions and investment tax credits claimed by them with respect to their investment in a partnership known as Eagle Film Co. The second set of issues dealt with whether petitioners were entitled to other loss deductions stemming from their investment in Gulf Consolidated Services, Inc. (hereinafter Gulf Consolidated), a purported S corporation, and whether petitioners had adequately substantiated their basis in that corporation's *735 stock. For the following reasons, we hold that the positions respondent took with respect to both sets of issues were substantially justified within the meaning of section 7430(c)(4)(A)(i). Therefore, as petitioners have failed to satisfy one of the conjunctive prerequisites to an award of litigation costs, there is no need to determine whether petitioners have satisfied the other requirements of section 7430. Accordingly, petitioners' motion will be denied. FINDINGS OF FACT The following facts are based on the entire record, including the pleadings; the pretrial hearing; the stipulated settlement agreements; the briefs, affidavits, and exhibits submitted by the parties with respect to this motion for litigation costs; as well as the parties' various other motions and supporting documents. During the years in issue, petitioners were partners in Eagle Film Co. (hereinafter Eagle Film), an alleged partnership which purportedly was in the business of producing, leasing, and distributing master video tapes. The parties have stipulated that Eagle Film is part of the National Laser tax shelter litigation project. On Schedule E of their Federal joint income tax returns for 1982, *736 1983, and 1984, petitioners claimed deductions in the respective amounts of $ 3,553, $ 3,008, and $ 2,695, all of which allegedly stemmed from operating losses sustained by Eagle Film which were passed through to the investing partners. On their 1982 tax return, petitioners also claimed a $ 54,154 investment tax credit with respect to their investment in Eagle Film. On their 1980 tax return, petitioners claimed a $ 631 investment tax credit which purportedly was the balance of the available tax credit amount carried back from 1982. In addition, on their respective 1983 and 1984 tax returns, petitioners claimed loss deductions of $ 121,215 and $ 4,858, stemming from their investment as shareholders in Gulf Consolidated, a purported subchapter S corporation. All of petitioners' claimed loss deductions and investment tax credits with respect to their investments in Eagle Film and Gulf Consolidated were subsequently disallowed by respondent in the deficiency notice. In April 1985, the Commissioner notified petitioners that their 1982 income tax return had been randomly selected for an audit. Subsequently, petitioners' 1983 and 1984 returns were audited. On July 15, 1986, the Commissioner *737 sent petitioners an examination report in which tax deficiencies and additions to tax for 1982, 1983, and 1984 were proposed. Petitioners timely filed a protest to the audit report and requested an administrative appeals conference. In December 1987, petitioners case was assigned to Mr. Gerald L. Savage, an IRS Appeals officer in the Houston Appeals Office. In an affidavit, dated June 3, 1991, Mr. Savage states that he was unable to settle petitioners' case at the administrative appeals stage because petitioners had not submitted documents substantiating their claimed loss deductions and investment tax credits, nor had they submitted sufficient information enabling him to determine the nature of the entities and the transactions involved which purportedly generated the deductions and tax credits. Petitioners have not disputed the contents of Mr. Savage's affidavit. Thus, we find that although petitioners did mail some documents to Mr. Savage in May 1988, they apparently did not comply with a further request by the Appeals officer for more documents in order to adequately substantiate the loss deductions and investment tax credits that they had claimed on their 1980, 1982, 1983, *738 and 1984 returns with respect to their investments in Eagle Film and Gulf Consolidated. On March 30, 1989, respondent issued petitioners a deficiency notice for the years 1980, 1982, 1983, and 1984, in which she disallowed all of the loss deductions and investment tax credits that petitioners had claimed with respect to their investments in Eagle Film and Gulf Consolidated. Respondent determined additions to petitioners' tax for all 4 years under section 6653(a), [2] for negligence or intentional disregard of the tax rules and regulations, and increased interest under section 6621(c), for substantial underpayments attributable to tax-motivated transactions. Respondent also determined an addition to tax for 1982 under section 6659 for a valuation overstatement with respect to petitioners' investment in Eagle Film, as well as an addition to tax for 1983 under section 6661 for a substantial understatement of income tax. *739 In her explanation attached to the deficiency notice, respondent cited the following reasons for disallowing the alleged partnership loss deductions and the investment tax credits that petitioners had claimed with respect to the partnership, Eagle Film. First, respondent asserted that petitioners had "not established that the transactions in which the partnership was involved * * * were bona fide arm's length transactions at fair value, that such transactions constituted a trade or business, that such transactions had any economic substance other than the avoidance of taxes, or that such transactions were not sham transactions entered into for the purpose of obtaining deductions for purported tax losses and non-deductible items." As alternative reasons for her disallowance of the alleged Eagle Film partnership losses, respondent stated that petitioners' method of accounting did not clearly reflect income and that they had failed to establish that they had any adjusted basis in the partnership from which to deduct the alleged losses, that any of the amounts deducted were paid or incurred, that any of the amounts deducted were ordinary and necessary business expenses, or that any *740 of the amounts deducted were anything other than capital expenses. Respondent stated that she had disallowed petitioners' claimed investment tax credit for 1982 because, among other things, petitioners had failed to establish that the property in which they had allegedly invested -- certain master tapes -- was tangible and new property, placed in service during the taxable year, having a useful life of 3 years or more, and that related persons or entities did not use the master tapes prior to their acquisition by the partnership, if, indeed the partnership ever acquired legal title to the master tapes. Moreover, according to respondent, petitioners had not established that they had any amount at risk in the Eagle Film partnership, as defined by section 465. Finally, with respect to her adjustments related to Eagle Film, respondent stated that she had disallowed the $ 631 investment credit, claimed in 1980 as a credit "carryback", because her adjustments to petitioners' tax liability in subsequent years had eliminated the credit entirely. As an explanation of her disallowance of the pass-through loss deductions that petitioners had claimed for 1983 and 1984 in the respective amounts *741 of $ 121,215 and $ 4,858 as purported subchapter S shareholders of Gulf Consolidated, respondent stated that petitioners had failed to establish that any deductible loss had been sustained, that they had a sufficient basis in Gulf Consolidated to take any loss, or that they had any amount "at risk", as defined by section 465. In their petition, petitioners generally disputed all of respondent's determinations as to their tax deficiencies and additions to tax. However, they did not make any reference to specific documents or facts which would have substantiated petitioners' entitlement to the loss deductions and investment tax credits. Nor did petitioners assert any specific facts in their petition to show that they were not negligent or intentionally disregarding the rules and regulations. Petitioners affirmatively alleged in their petition that respondent was barred by the 3-year statute of limitations under section 6501 from assessing tax deficiencies for 1980, 1982, 1983, and 1984. However, petitioners apparently conceded this issue after respondent, in her answer, set forth facts and documents showing that petitioners had signed several Consents to Extend the Time to Assess *742 Tax (Forms 872 and 872-A) which effectively extended the period for assessing petitioners' 1980, 1982, 1983, and 1984 tax deficiencies to June 30, 1989. The notice of deficiency was issued on March 30, 1989, thereby tolling the statute of limitations under sec. 6501. Shortly after the petition was filed, petitioners' case was assigned to an IRS attorney, M. Kathryn Bellis, with the District Counsel's office in Houston, Texas. In an affidavit, dated June 3, 1991, Ms. Bellis states that although she tried several times to contact petitioners' attorney, Mr. Franklin, by telephone, she was unable to reach him until December 18, 1989, at which time she made an appointment to meet with him to discuss petitioners' case on December 21, 1989. According to Ms. Bellis, Mr. Franklin did not appear for the meeting, nor did he call to cancel or reschedule it. When Ms. Bellis called his secretary, she was informed that Mr. Franklin had left town and had forgotten about their appointment. Petitioners have not disputed the contents of Ms. Bellis' affidavit. The attorneys for respondent and petitioners held their first pretrial conference on January 16, 1990. At their meeting on January 16, *743 1990, the parties reached a basis for settling all of the disputed deductions and tax credits relating to petitioners' investment in Eagle Film. From the record, it appears the parties also discussed the second set of issues in this case, the claimed deductions and credits resulting from petitioners' investment in Gulf Consolidated. On February 14, 1990, respondent sent petitioners a letter confirming the parties' understanding as to all Gulf Consolidated issues, pursuant to their January meeting. According to respondent, petitioners, as Gulf Consolidated shareholders, had not yet adequately substantiated their basis from which they could deduct their claimed 1983 and 1984 losses. In her letter, respondent stated that petitioners' 1983 loss deduction of $ 121,215, which was subsequently disallowed, was based upon petitioners' purported contribution of capital in the amount of $ 30,304 in exchange for Gulf Consolidated stock, as well as a purported loan to Gulf Consolidated by petitioners in the amount of $ 90,912. Respondent stated that she understood that the capital contribution was made to Gulf Consolidated by one Wesray Corp. (hereinafter Wesray) on behalf of petitioners, *744 based upon a loan to them by Wesray. Respondent further stated that "since Wesray is related to Gulf Consolidated Services, you [petitioners] agreed to provide documentation, such as cancelled checks, to substantiate the repayment by the Buxbaums * * * of the loans from Wesray." Apparently, at the time respondent sent the letter, petitioners had not yet provided respondent with such documentation. In her letter, respondent also requested petitioners to provide her with canceled checks or deposit slips to show that in 1986 Gulf Consolidated had repaid petitioners the $ 90,912 loan amount which petitioners had claimed as part of their basis in Gulf Consolidated. According to respondent's February 14, 1990, letter, the parties agreed in their January conference that petitioners' claimed loss deduction of $ 4,858 in 1984 was "based upon a pledge of dividends to Gulf Consolidated." At the conference, respondent apparently agreed to concede that petitioners are entitled to the $ 4,858 loss deduction and petitioner agreed to include it as a dividend in their 1984 income. In her February letter, respondent asked petitioners to provide all requested documentation by March 16, 1990. By *745 the end of March 1990, petitioners had sent respondent enough documents to substantiate $ 90,912 of the $ 121,215 that they had claimed as their total basis in Gulf Consolidated for 1983. In a letter, dated April 24, 1990, respondent acknowledged that petitioners had substantiated that portion of their claimed 1983 basis in Gulf Consolidated. Respondent also repeated her request for documents to substantiate the remaining portion of their claimed basis, $ 30,304, representing petitioners' purported contribution of capital for the stock. On June 28, 1990, the parties filed a Stipulation of Settlement resolving the issues pertaining to petitioners' involvement in Eagle Film, which is part of the National Laser tax shelter project. The Eagle Film settlement was drafted by the IRS project attorney for the National Laser tax litigation project and subsequently signed by petitioners' attorney, Mr. Franklin. The Eagle Film settlement document did not address any of the issues relating to petitioners' investment in Gulf Consolidated. In the Eagle Film settlement, the parties agreed that "petitioners are not entitled to any investment tax credits claimed with respect to the National *746 Laser Tax shelter for 1980, 1982, 1983, and 1984, including investment tax credits in the amount of $ 54,154 claimed for 1982." According to the settlement, petitioners were entitled to 1984 ordinary partnership expense deductions relating to the National Laser tax shelter in the amount of $ 3,123.43. With respect to the additions to tax imposed by respondent in the deficiency notice, the parties agreed that petitioners are liable under section 6659 for making a valuation overstatement and that the applicable percentage of the underpayment for purposes of computing the section 6659 addition to tax should be 10 percent. The parties further agreed that total amounts of petitioners' underpayments of income taxes for 1980, 1982, 1983, and 1984 are "substantial underpayments attributable to tax motivated transactions." Accordingly, the parties stipulated to the fact that petitioners are liable for the interest provided by section 6621(c) on the entire income tax deficiency for each of the tax years in issue once each of those deficiencies is finally determined. The parties further stipulated that petitioners are not liable for any additions to tax for negligence under section 6653(a)(1) *747 or (2), or for a substantial understatement of tax as imposed by respondent under section 6661, but only to the extent those additions are attributable to petitioners' involvement with Eagle Film, which is part of the National Laser tax shelter. Once the parties had settled the issues pertaining to petitioners' involvement in Eagle Film, the remaining issues were set for a trial session beginning on February 25, 1991, in Houston, Texas. Those issues involved petitioners' entitlement to the loss deductions that they had claimed as Gulf Consolidated shareholders in 1983 and 1984 and their basis in that corporation. A few days before the scheduled trial, petitioners apparently gave respondent more documents to substantiate the full amount of their claimed basis in Gulf Consolidated so as to establish their entitlement to the loss deductions which they had claimed on their returns. By the time of trial, all the issues in petitioners' case had been settled. However, when the parties appeared before the Court to submit their final settlement, petitioners' attorney objected to the documents prepared by respondent because they did not allow petitioners any of the Eagle Film loss deductions *748 or tax credits which they had claimed for 1982 and 1983. Petitioners had not substantiated such claims and, indeed, had signed a stipulation conceding such issues. Nevertheless, respondent agreed to allow petitioners to substantiate those particular claims at that time. Due to the revision, the parties told the Court they would submit a stipulated decision as soon as possible. On April 4, 1991, the parties executed a second settlement agreement (hereinafter final settlement) disposing of all issues related to petitioners' involvement in Gulf Consolidated and incorporating petitioners' revised Eagle Film settlement. In their final settlement, the parties agreed that respondent's determinations were correct only to the extent that there is a deficiency in petitioners' 1982 income tax of $ 33,489.50, an addition to their 1982 income tax of $ 3,348.95 under section 6659, as well as additional interest on their 1982 tax deficiency pursuant to section 6621(c). The parties agreed that there are no deficiencies in, or additions to, petitioners' 1980, 1983, or 1984 income taxes as determined by respondent in the deficiency notice. Petitioners moved for an award of litigation costs under *749 section 7430. In their motion, petitioners stated that their litigation costs could not be determined at that time but that they believed such costs would amount to approximately $ 5,000. Petitioners initially did not include an affidavit with their motion setting forth the "nature and amount of each item of costs paid or incurred for which such an award is claimed" as required by Rule 231. Subsequently petitioners submitted an affidavit stating that the total attorney's fees and filing fees claimed for petitioners' case and a related but unconsolidated case, Ellison v. Commissioner, docket No. 16069-89, amounted to $ 2,430. [3] Petitioners did not state how much of the combined costs were attributable to their case alone. Respondent timely filed an objection to petitioners' motion. As the parties have settled their disputes with respect to all of the tax deficiencies *750 and additions to tax determined by respondent in these cases, the issues before us pertain only to whether petitioners qualify as the "prevailing party" entitled to an award of reasonable litigation costs under section 7430, and if so, what costs are reasonable. OPINION Section 7430(a) provides, generally, that a taxpayer who has substantially prevailed in a civil tax proceeding may be awarded reasonable litigation costs incurred in such proceeding. In order to be entitled to an award of litigation costs, the taxpayer must show that he was the "prevailing party" by establishing (1) that the position of the United States in the civil proceeding was not substantially justified, sec. 7430(c)(2)(A)(i); (2) that the taxpayer substantially prevailed in the proceeding with respect to either the amount in controversy or the primary issues presented, sec. 7430(c)(2)(A)(ii), and (3) that, at the commencement of the proceeding, the taxpayer met the net worth requirements specified in section 7430(c)(2)(A)(iii). In addition, litigation costs will not be awarded unless the taxpayer can demonstrate that he exhausted the administrative remedies available to him with the Internal Revenue Service, *751 sec. 7430(b)(1); that the taxpayer did not unreasonably protract any portion of the proceedings for which litigation costs would otherwise be awarded, sec. 7430(b)(4); and that the amount of costs claimed is reasonable, sec. 7430(c)(1). These are conjunctive requirements that must all be met in order for an award to be made to petitioners. , affd. ; . Petitioners have the burden of proof as to each requirement. Rule 232(e); ; , affd. . Respondent concedes that, based on the parties' settlement agreement, petitioners have substantially prevailed with respect to all Gulf Consolidated issues, which constitute one of the two major sets of issues in the petitioners' case. However, respondent contends that petitioners are nonetheless not entitled to litigation costs because they have *752 not proven that any of the other elements of section 7430 have been met. In particular, respondent argues that petitioners have failed to show that her position was not substantially justified. Sec. 7430(c)(4)(A)(i). We agree that petitioners have not satisfied this important prerequisite to an award of litigation costs. Whether respondent's positions were substantially justified turns on a finding of reasonableness, based on all of the facts and circumstances, as well as legal precedents relating to the case. [4]; ; . *753 The legislative history of section 7430 provides additional guidelines for determining whether respondent's conduct was substantially justified. Other factors the committee believes might be taken into account in making this determination include, (1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant. * * * [H. Rept. 97-404, at 12 (1981).] Section 7430(c)(7) [5] defines "position of the United States" to include: (A) the position taken by the United States in a judicial proceeding * * *, and (B) the position taken in an administrative proceeding * * * as of the earlier of -- (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency. Although petitioners' case was sent to the IRS Office of Appeals after petitioners protested the *754 audit results, the parties have not submitted a "notice of decision" from the IRS Office of Appeals or a letter from that office functioning as such. Therefore, we evaluate respondent's position as of the date of the notice of deficiency. Sec. 7430(c)(7)(B)(i) and (ii). We have reviewed those events that occurred before the issuance of the deficiency notice "to determine whether respondent acted reasonably in pursuing the litigation in light of what he knew at the time the litigation commenced." , affd. ; ; . *755 From the record, we find that the facts known to respondent at the time the deficiency notice was issued demonstrate the reasonableness of respondent's actions. It is fundamental that deductions are a matter of legislative grace and petitioners bear the burden of proving that all the requirements of their claimed deductions are satisfied. Rule 142(a); . Whenever there is a factual determination with respect to a tax return, respondent is not obliged to concede the case until the necessary documentation is received to prove the taxpayer's contentions and claims. ; ; ; see also ; . According to the uncontroverted affidavit of Mr. Savage, the IRS administrative appeals officer assigned to review petitioners' tax returns, the information *756 that petitioners gave him was not enough to prove their entitlement to the deductions or credits which they claimed, or even to allow him to determine the nature of purported entities or the transactions involved. In the explanation of her adjustments attached to the deficiency notice, respondent states that petitioners did not include, with any of their tax returns, documents adequately substantiating their claimed deductions and investment tax credits. Nor did petitioners include such factual information showing their entitlement to the disallowed deductions and tax credits in their petition. Rule 34(b)(5) requires that a petition contain "Clear and concise lettered statements of the facts on which petitioner bases the assignments of error". Petitioners did not do this; rather, their petition contains only numerous conclusions of law which respondent denied in her answer. Clearly, respondent's position up to this point in the proceedings was justified. . When petitioners filed the first stipulated settlement agreement in June 1990, they conceded that they were not entitled to the loss deductions and investment *757 tax credits generated by their investment in Eagle Film. Despite petitioners' concession, respondent eventually allowed petitioners some of their claimed deductions and credits with respect to Eagle Film when petitioners finally provided respondent with photocopies of canceled checks to Eagle Film at the time of trial. We conclude that respondent's actions under these circumstances were more than reasonable. Although respondent concedes that petitioners prevailed with respect to the second set of issues pertaining to Gulf Consolidated, respondent was justified in refusing to concede these issues until petitioners had substantiated them. In March 1990, after petitioners provided respondent with documents substantiating part of their claimed basis in Gulf Consolidated, respondent immediately agreed to decrease petitioners' tax liability to the extent of their substantiated basis in the corporation. When petitioners, two days before their trial, provided documentation of the rest of their basis in Gulf Consolidated, respondent again made the corresponding concessions, thus resolving all issues in petitioners' case. Once again, we hold that the position taken by respondent was reasonable. *758 Having held that the positions taken by respondent throughout this proceeding were substantially justified within the meaning of section 7430(c)(4)(A)(i), there is no need to fully address the other arguments raised in petitioners' motion for litigation costs. However, based on our review of the record, we are persuaded that petitioners fell far short both in satisfying the other elements of section 7430 and in fully complying with Rule 231(b) and (d), regarding the content of a motion for litigation costs and the affidavit to support the costs being claimed. Congress never intended that attorney fees and litigation costs be awarded to the prevailing party in a tax proceeding as a general rule, but only in exceptional cases where the losing party's contentions cannot justify the expense incurred by the prevailing party in refuting fallacious arguments. H. Rept. 97-404, at 12 (1981); 131 Cong. Rec. S15482 (daily ed. Nov. 14, 1985) (See statement of Senator Domenici). [6] Presumably, that is why the requirements provided by section 7430 are conjunctive and stringent. If a taxpayer moves for the reimbursement of his litigation expenses but cannot come close to meeting all of the *759 prerequisites to such an award under section 7430 or to complying with the letter and spirit of Rule 231, he is merely expending needless effort and additional funds, as well as wasting the Court's time. Petitioners' motion for litigation costs will be denied. To reflect the foregoing, An appropriate order and decision will be entered. Footnotes
1. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure and all section references are to the Internal Revenue Code.↩
1. 50 percent of the interest computed on that portion of the underpayment attributable to negligence.↩
2. 120 percent of the interest due on the deficiency for the taxable year.↩
2. In determining additions to petitioners' tax for their alleged negligence or intentional disregard of the rules and regulations, respondent determined an addition to tax under sec. 6653(a) for 1980, and under amended sec. 6653(a)(1) and (2) as it applies to the taxable years 1982, 1983, and 1984.↩
3. Petitioners' attorney, James L. Franklin, also served as Cecil and Catherine Ellison's attorney in their Tax Court case, docket No. 16069-89.↩
4. The Tax Reform Act of 1986 changed the language describing the position of the United States from "unreasonable" to "not substantially justified", effective for civil tax actions or proceedings commenced after Dec. 31, 1985. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1551(d)(1), 100 Stat. 2085, 2752. However, this and other courts have held that the "substantially justified" standard is not a departure from the previous reasonableness standard. ; , affd. , and cases cited therein.↩
5. Sec. 7430(c)(7) applies to proceedings, such as petitioners' case, that commenced after Nov. 10, 1988. Sec. 7430(c)(7) was added to the Internal Revenue Code by sec. 6239(a) of the Technical and Miscellaneous Revenue Act (TAMRA) of 1988, Pub. L. 100-647, 102 Stat. 3743, for purposes of expanding the definition of the "position of the United States" for purposes of sec. 7430. . Prior to the addition of sec. 7430(c)(7) by TAMRA, sec. 7430(c)(4), since amended, defined "position of the United States" as follows: (4) POSITION OF THE UNITED STATES. -- The term "position of the United States" includes -- (A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based.↩
6. See also Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 (J. Comm. Print 1987). The Joint Committee Explanation has been relied upon by courts in interpreting tax statutes. ; , affd. .↩